**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13648

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSEPH CHRISTOPHER RICARD,
CHRISTOPHER ALAN BAIRD,
LUU NGUYEN DIEU HONG,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20488-JEM-5

_____

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

After a multi-week jury trial, Joseph Christopher Ricard, Christopher Alan Baird, and Luu Nguyen Dieu Hong were each

convicted of three counts of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and one count of stalking, in violation of 18 U.S.C. § 2261A(1)(A). The district court sentenced Ricard to a total term of 204 months' imprisonment, Baird to a total term of 168 months' imprisonment, and Hong to a total term of 144 months' imprisonment.

All three defendants appeal their convictions. In addition, Hong challenges her sentence. Collectively, they raise 14 issues:

1) Whether the government committed multiple discovery violations, thereby denying Ricard a fair trial;

2) Whether the district court abused its discretion when it declined to question a juror who defense counsel said had been sleeping during trial;

3) Whether the district court erred when it failed to give a curative instruction after a stipulation between Baird and the government was read to the jury;

4) Whether the district court erred when it allowed the government to play a five-minute excerpt from Ricard's post-arrest interview but did not permit Ricard to play the entire two-hour recording;

5) Whether the district court abused its discretion when it prevented Ricard from playing audio tapes of a victim's police interview to impeach her trial testimony;

6) Whether the district court erred when it stopped the testimony of Trang Nguyen, a cooperating co-defendant who

testified for the government; struck some of her original testimony in front of the jury; and later allowed her to continue testifying;

7) Whether the district court erred when it twice instructed the jury that it was not to consider the portions of Trang Nguyen's testimony that the court had previously stricken and reminded the jury of its role in determining a witness's credibility;

8) Whether the district court erred when it declined to give Ricard's proposed "theory-of-defense" jury instruction;

9) Whether the district court erred when it prevented Baird and Hong from presenting evidence to support a "duress defense" at trial and refused to instruct the jury on duress;

10) Whether the district court erred when it purportedly prevented Baird and Hong from presenting evidence to negate intent;

11) Whether there was sufficient evidence at trial to support Ricard's stalking conviction;

12) Whether there was sufficient evidence to support Hong's and Baird's convictions for kidnapping and stalking;

13) Whether the district court erred at sentencing when it enhanced Hong's offense level because a ransom demand was made during the offense; and

14) Whether the district court erred at sentencing when it enhanced Hong's offense level because the offense involved the use of a dangerous weapon.

We have reviewed the parties' briefs, the authorities cited therein, and the underlying record. Of the 14 issues the defendants raised, only one issue warrants further discussion: whether the district court erred when it refused to allow Baird and Hong to present a duress defense.[1] After careful consideration, and with the benefit of oral argument, we find all the defendants' challenges meritless and therefore affirm.

## I. BACKGROUND

### A. Offense Conduct

Sometime between late 2021 and early 2022, Trang Nguyen started investing money with Ha Nguyen. These were no small investments—in the end, Trang had sent Ha approximately 1.3 million dollars. According to Trang, Ha told her that the money would be invested in Vietnamese real estate projects. But as time went on, Trang began to suspect that Ha had stolen her money, including $60,000 that Trang had borrowed from Ricard, an associate of hers.

Not long after these suspicions arose, Trang met Hong, another of Ha's investors, on the internet. Through their conversations, the two concluded that Ha had made off with both of their

---

[1] As to the other 13 issues, we summarily affirm the district court.

investments. Hong and Trang—along with Baird, Hong's husband—brainstormed ways to get their money back. They investigated Ha, eventually learning that she lived in Miami, Florida, with her family. Armed with this new information, Baird, Trang, Hong, and Ricard made plans to travel to Miami to confront Ha.

The group arrived in Miami on September 21, 2022. Ricard and Trang landed first; Baird and Hong arrived soon after. While checking into their hotel, Ricard asked the front desk agent if he knew where they could find some "tough guys." Ricard and Trang also asked the agent if he knew any security guards available for hire. The agent gave them Mohammad Ahmed Khan's information. Ricard hired Khan and another man, Joe Nathan Hightower, to be security guards.

The group put their plan into motion the next day. They gathered at the hotel in the morning. Ricard had told Khan that he wanted the security guards to be armed, and both Khan and Hightower showed up with firearms. They split up into different vehicles: Khan and Hightower left in a red Jetta, Ricard and Trang went in a white Toyota, and Baird and Hong drove off in a black BMW. On they went to Ha's house.

The group arrived at Ha's home sometime around noon. Ricard walked up to the front door, where he was met by Idania Marie Webster Lopez, the nanny for Ha's two minor children. The group forced their way into Ha's home, with Ricard leading the way. Ricard separated Webster Lopez from the two minor children, and Trang demanded that the nanny tell her where Ha was.

Webster Lopez told the group that Ha was working at a nearby Domino's Pizza restaurant. Trang told Webster Lopez to call Ha and ask her to come home immediately. When Ha did not answer her phone, Ricard forced Webster Lopez to give him the address of the restaurant and demanded that she and the children come with them. Webster Lopez and the two children complied, reluctantly getting into the Toyota with Ricard, Hong, and Trang. Khan and Hightower got back into the Jetta, and Baird drove alone in the BMW.

Once they arrived at Domino's Pizza, Ricard, Trang, Baird, and Khan went into the restaurant. Hong and Hightower stayed near the locked Toyota, where Webster Lopez and the children sat and waited. Ricard confronted Ha in the store. He told the restaurant's employees that he was a federal law enforcement officer and slid over the counter. Ricard escorted Ha out of the restaurant, showed her that Webster Lopez and her children were in the Toyota, and forced her into the Jetta.

The group took Ha, Webster Lopez, and the children to various locations around Miami. First stop: Taboo Miami, a strip club. They sat in the club's parking lot, where the group demanded that Ha pay them their money back and threatened that she needed to comply if she ever wanted to see her children again. Despite these threats, Ha insisted that she did not have the money to pay them.

But they would not take no for an answer. First, the group used Ha's cellphone to access her bank account information. Once they got the information, Trang called Ha's banks and did her best

to impersonate Ha. Their efforts were unsuccessful—they were unable to get any money transferred from Ha's account. Met with this setback, Ricard pivoted to a different approach. He took photos of Ha, Webster Lopez, and the two children and sent the photos to Ha's husband, along with a ransom demand for $100,000. That tactic, too, bore no fruit.

After several hours at Taboo Miami, the group moved to Kwik Stop, a convenience store near the strip club. The group bought snacks and water for Webster Lopez and the children. When Webster Lopez said that she needed to use the restroom, she was allowed to go, but Hightower (who was still armed) and Hong went with her. After spending some time at the Kwik Stop, Ricard paid Khan and Hightower for their services, and the two left the scene.

Cut to the streets of Miami. Baird, Ricard, Hong, and Trang drove around with the victims for several hours while they tried to get Ha to give them money. Trang and Hong were in the Toyota with Webster Lopez and the children; Baird and Ricard drove Ha in the BMW.

Eventually Trang and Hong drove Webster Lopez and the children back to Ha's residence. But when they got close to the house, they saw a large police presence waiting outside. The two turned the car around and drove to Bird Bowl, a nearby establishment.

Ricard and Baird met Trang and Hong at Bird Bowl. By that point, Ricard and Baird had released Ha. The group released Webster Lopez and the two children at Bird Bowl. Before they left, Ricard apologized to Webster Lopez, returned her cellphone, and gave her $100 for her trouble.

After an investigation into these events, Baird, Hong, Ricard, and Trang were indicted for various offenses. Each of the four defendants was charged with one count of conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c); four counts of kidnapping, in violation of 18 U.S.C. § 1201(a)(1); one count of stalking, in violation of 18 U.S.C. § 2261A(1)(A); and one count of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).[2]

Trang pleaded guilty to her charges, and the other three defendants went to trial.

## B. Duress Proffer

During the trial, Baird and Hong—who were represented by the same trial counsel—informed the court that they intended to put on a duress defense and submitted jury instructions on duress.[3] In response, the court asked Baird and Hong to proffer facts supporting their duress theory.

---

[2] Khan and Hightower were also charged with crimes, but they were acquitted at trial.

[3] Because we write for the parties and assume their familiarity with the record, we discuss only what is necessary to explain our decision.

According to their proffer, the pair traveled to Florida with the intent of getting Ha to either sign or extend a promissory note. It was only once they entered Ha's home, they said, that Ricard took over and forced them to commit their crimes.

They proffered that once they left Ha's home, Ricard grabbed Hong by the arm, took her away from Baird's BMW, and forced her into a different vehicle, making her a hostage from that point on. Baird and Hong highlighted the presence of Khan and Hightower, two armed guards who they said threatened their safety during the crime. They also told the district court that "[t]here was a threat made: If the police are called, there will be dead bodies." Doc. 364 at 45.[4] According to their proffer, "That is why, despite separation, despite times where my client -- when Mr. Baird was available to call the police, he could not, because his wife was a hostage." *Id.* The two also pointed to a video admitted into evidence at trial, which they said showed that Ricard intervened to prevent Hong from running to Baird. In their view, Hong was a hostage throughout the event, and Baird was forced to go along with Ricard's demands to keep her safe.

Both Ricard and the government opposed Baird and Hong's request to put on a duress defense. The government highlighted that Khan and Hightower exited the conspiracy several hours before Baird and Hong ceased their conduct, giving them ample time "to either exit the conspiracy, contact law enforcement, or take

---

[4] "Doc." numbers refer to the district court's docket entries.

some other steps." Doc. 364 at 51. Ultimately, the district court concluded that Baird and Hong could not assert a duress defense and declined to give a duress instruction.

On appeal, Baird and Hong contend that the district court erred when it prevented them from presenting a duress defense. In line with that position, they also argue that the district court's failure to instruct the jury on their duress defense was error.

## II. STANDARD OF REVIEW

We review *de novo* a trial court's conclusion that a defendant's evidence is insufficient to create a jury question on an affirmative defense. *See United States v. Davis*, 902 F.2d 860, 866 (11th Cir. 1990).[5]

"We review a district court's refusal to give a proposed jury charge for abuse of discretion." *United States v. Flores*, 572 F.3d 1254, 1266 (11th Cir. 2009).

## III. DISCUSSION

Duress is an affirmative defense to criminal liability. *See United States v. Wattleton*, 296 F.3d 1184, 1196 n.20 (11th Cir. 2002). A defendant establishes the defense of duress when he proves that

---

[5] We note that in at least one published case we have reviewed this issue under the more deferential abuse-of-discretion standard. *See United States v. Amede*, 977 F.3d 1086, 1102–03 (11th Cir. 2020) (reviewing the district court's conclusion as to the legal sufficiency of the defendant's duress defense for an abuse of discretion). But we need not decide today which standard of review applies because, as we discuss below, we cannot say that the district court erred even under a *de novo* review of the record.

he "(1) acted under an immediate threat of death or serious bodily injury; (2) had a well-grounded fear that the threat would be carried out; and (3) had no reasonable opportunity to escape or inform the police." *United States v. Amede*, 977 F.3d 1086, 1102 (11th Cir. 2020) (citation modified). Before a duress defense can be submitted to a jury, "a defendant must first produce or proffer evidence sufficient to prove the essential elements of the defense." *United States v. Montgomery*, 772 F.2d 733, 736 (11th Cir. 1985). When determining whether this requirement has been met, a court must view the evidence in the light most favorable to the defendant. *United States v. Fernandez*, 837 F.2d 1031, 1035 (11th Cir. 1988).

Baird and Hong argue that their evidentiary proffer established a prima facie duress defense. We disagree. Viewing the evidence in the light most favorable to them, we conclude that their evidentiary proffer was insufficient to satisfy any of the essential elements of the defense.

First, Baird and Hong's proffer did not establish that they were acting under an immediate threat of death or serious bodily injury. The immediacy requirement is a "rigorous one." *United States v. Sixty Acres in Etowah Cnty.*, 930 F.2d 857, 861 (11th Cir. 1991) (citation omitted). Although threats to a third party can be sufficient, *see United States v. Blanco*, 754 F.2d 940, 943 (11th Cir. 1985), "the apprehension of immediate danger must continue during the whole time the crime is committed," *Sixty Acres*, 930 F.2d at 861 (citation omitted).

Baird and Hong's evidentiary proffer did not satisfy this element because the threat they identified did not exist throughout the entirety of the crime. The proffer suggested that the danger came from Khan and Hightower, the armed guards whom Ricard hired. But the evidence at trial showed that Khan and Hightower departed several hours before Baird and Hong stopped their criminal conduct, a fact that neither Baird nor Hong has ever disputed.

Baird and Hong argue, for the first time on appeal, that witness testimony suggested that Ricard also had a firearm. They did not point to that evidence during their proffer. But even when we consider that testimony, viewed in the light most favorable to them, it does not satisfy the immediacy requirement. Undisputed evidence shows that both Baird and Hong spent ample time separated from Ricard at various points as the crime unfolded. And so, any apprehension of immediate danger caused by Ricard was, at most, intermittent, precluding them from asserting a duress defense on that ground.

The second element of the duress defense has not been satisfied, either. Baird and Hong were required to proffer a well-grounded fear that a threat would be carried out. *See Amede*, 977 F.3d at 1102. They proffered, "[t]here was a threat made" that there would be dead bodies if someone called the police. Doc. 364 at 45. Assuming that Ricard was the person who made the threat—and the record is not clear on this point—nothing in the proffer suggests that their fear of that threat was well-grounded. In fact, the opposite is true: the evidence at trial showed that Ricard was nonviolent

toward Hong and Baird the entire time. On this record, Baird and Hong failed to satisfy the second element of the duress defense.

Baird and Hong also failed to proffer evidence of the third element, that they had no reasonable opportunity to escape or inform the police. Viewed in the light most favorable to them, their proffer shows that they had ample opportunity to pursue reasonable, legal alternatives by informing law enforcement. Baird drove to the Domino's Pizza alone, giving him several minutes when he could have contacted the police (a fact that Baird openly admitted during his proffer). Similarly, Hong rode in the car with Trang, Webster Lopez, and the children for several hours without Ricard or the armed guards present. Baird and Hong each could have informed the police at various times but failed to do so. For all these reasons, the district court correctly ruled that they were not entitled to a duress defense at trial.

Lastly, Baird and Hong contend that they were entitled to a jury instruction on duress. But having concluded that Baird and Hong failed to meet their burden of proffering enough evidence to support a duress defense, the court did not err in refusing to give a duress instruction. *See United States v. Quinn*, 123 F.3d 1415, 1423 (11th Cir. 1997) (concluding that the district court correctly refused to instruct on an affirmative defense when the defendant failed to proffer evidence sufficient to raise a jury issue as to that defense).

**AFFIRMED**.